## IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO
### CIVIL DIVISION

CHARLES H. COOPER, JR., as     :
**Administrator of the Estate of**     :
**Jasyiah J. Boone, deceased minor,**     :    Case No.:
2175 Riverside Drive     :
Columbus, Ohio 43221,     :
    :    **Judge**
       **Plaintiff,**     :
    :
     **v.**     :    **JURY DEMAND**
    :    **ENDORSED HEREON**
**LONGWOOD FOREST PRODUCTS, INC.**     :
88 Industrial Park Road     :
Pennsville, NJ 08070,     :
    :
**Also Serve:**     :
    **Longwood Forest Products, Inc.**     :
    c/o Donald Browne, Registered Agent     :
    1375 Chews Landing Road     :
    Laurel Springs, NJ 08021,     :
    :
    **and**     :
    :
    **Longwood Forest Products, Inc.**     :
    833 West Walnut Street     :
    Carson, CA 90746,     :
    :
**ANGEL LINE**     :
88 Industrial Park Road     :
Pennsville, NJ 08070,     :
    :
**Also Serve:**     :
    **Angel Line**     :
    833 West Walnut Street     :
    Carson, CA 90746,     :
    :
**WAYFAIR, INC.**     :
c/o Enrique Colbert, Registered Agent     :
4 Copley Place, Suite 7000     :
Boston, MA 02116,     :
    :
**WAYFAIR LLC**     :
c/o Enrique Colbert, Registered Agent
4 Copley Place, Suite 7000
Boston, MA 02116,

Exhibit A

**WAYFAIR PURCHASING LLC**
c/o Incorporating Services, Ltd.
44 School Street, Suite 505
Boston, MA 02108,

     **Defendants.**

## COMPLAINT

Defendant Longwood Forest Products, Inc. and/or Angel Line are entities that design, manufacture, import and/or distribute children's furniture for sale in Ohio and throughout the United States. These furniture products are sold to consumers in Ohio via on-line suppliers like Wayfair. This case is about a bunk bed distributed under the Angel Line brand and sold by on-line supplier Wayfair to the mother of Jasyiah Boone in December 2017. The bunk bed was assembled and used for its intended purpose in a child's bedroom. On May 22, 2018, Jasyiah J. Boone, who was just shy of three years old, was found dead from positional asphyxiation when his body was discovered wedged between the top step of the ladder and the bottom of the bunk bed frame. The tragic death of Jasyiah was a direct and proximate result of a defect that existed in the bunk bed and ladder.

## THE PARTIES

1.    Plaintiff, Charles H. Cooper, Jr., is the Administrator of the Estate of Jasyiah J. Boone and brings this action for the benefit of the Estate of Jasyiah J. Boone

2.    Defendant Longwood Forest Products, Inc. is a company with a principal place of business in Pennsville, New Jersey.

3.    Angel Line is a legal entity that manufactured or supplied the bunk bed. Pleading in the alternative, Angel Line is a trade name and/or a ficticious name used by the manufacturer or supplier of the bunk bed. Longwood Forest Products, Inc. and Angel Line are collectively referred to as "Angel Line" in this Complaint.

2

4.      Defendants Wayfair Inc., Wayfair LLC, and/or Wayfair Purchasing LLC (collectively "Wayfair") are legal entities with their principal place of business in Boston, Massachusetts.  Wayfair supplies products and goods to citizens of the State of Ohio and throughout the United States via www.wayfair.com.

5.      Wayfair supplied the Angle Line bunk bed and ladder to Jasyiah's mother.

## JURISDICTION AND VENUE

6.      Wayfair regularly engages in and solicits business from the State of Ohio and derives substantial revenue from supplying goods and services to Ohio residents.

7.      Angel Line regularly engages in and solicits business from the State of Ohio and derives substantial revenue from supplying goods and services to Ohio residents.

8.      Jurisdiction and venue are proper in this Court because the defective product was purchased in Franklin County, by a resident of Franklin County and the wrongful death occurred in Franklin County, Ohio.

## BACKGROUND INFORMATION AND FACTS

9.      In December, 2017, the mother of Jasyiah J. Boone purchased a Fremont Twin over Twin Bunk Bed by Angel Line, which contained a ladder providing access to the top bed (ladder and bunk bed collectively referred to as "Bunk Bed").

10.      The Bunk Bed was purchased from and supplied by Wayfair, using its website www.wayfair.com.

11.      The Bunk Bed was designed, formulated, created, tested, manufactured, marketed and/or imported by Angel Line.

12.      The Bunk Bed was placed into the stream of commerce, supplied by and ultimately delivered to the Boone family by Wayfair.

3

13.     Wayfair's business is focused on the sale of furniture and other consumer goods intended for residential use.

14.     In December 2017, the Bunk Bed was delivered to the Boone family in Franklin County, Ohio and was assembled pursuant to the assembly services purchased through Wayfair.

15.     The Bunk Bed contains a narrow opening between the top rung of the ladder and the bottom of the upper bed frame where a small child could enter, become trapped, and die from positional asphyxiation.  The following is Wayfair's illustration of the Bunk Bed on its website:



LATENT CHILD DEATH ENTRAPMENT HAZARD

16.     On May 22, 2018, Jasyiah J. Boone was playing in his house with his siblings. The children were playing in his brothers' bedroom where the Bunk Bed was located.

17.     While Jasyiah's mother was in the bathroom, one of Jasyiah's siblings alerted her that a problem existed in the bedroom where the Bunk Bed was located.  She immediately left the bathroom and went to the bedroom.

4

18.     Jasyiah's body was trapped in the narrow opening between the top step of the ladder and the bottom frame of the top bed.

19.     Jasyiah's mother arrived at the bedroom and found Jasyiah's lifeless body trapped in the narrow opening in the top rung of the ladder.  Jasyiah's mother frantically struggled to free her son's trapped body and then tried to revive him.

20.     Despite efforts from his mother, EMS and hospital personnel, Jasyiah could not be revived.

21.     Jasyiah died from positional asphyxiation as a direct and proximate result of his body being lodged in the narrow opening between the top step of the ladder and top bed frame.

22.     The Franklin County Coroner performed an autopsy and determined the cause of death was "positional asphyxia due to chest compression between bunk bed and the bunk bed ladder."

23.     Prior to his death, Jasyiah experienced conscious pain, suffering and panic when he became lodged in this narrow opening and he continued to experience conscious pain, suffering and panic as he struggled to free himself from his trapped condition, and while he struggled to breathe.

## FIRST CLAIM
### (Product Liability – Angle Line/Longwood Forest)

24.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully restated herein.

25.     Angel Line engages in the business of designing, formulating, producing, creating, making, and/or constructing the Bunk Bed and/or components of the Bunk Bed.

26.     The Bunk Bed is a product that is intended to be, or it is reasonably foreseeable to be, placed in a bedroom used by children.

27.     Angel Line, as manufacturer of furniture marketed for and intended to be used by children, recognized or should have recognized, the risk of children dying from positional asphyxiation or strangulation based upon industry safety standards, government standards, private safety standards as well as the attention, perception, memory, knowledge, and intelligence of Angel Line based upon the creation of this product and other furniture intended to be used by children.

28.     Angel Line, as a manufacturer of furniture marketed for and intended to be used by children, had superior knowledge, perception, attention, memory and intelligence about the hazards and risks of children dying from positional asphyxiation or strangulation from furniture marketed for or intended to be used by children,

29.     At the time the Bunk Bed left the control of Angel Line, the foreseeable risks associated with the Bunk Bed exceeded the design benefits of the Bunk Bed because a young child could die from positional asphyxiation or strangulation from a Bunk Bed design that contains a narrow opening between the top rung of the ladder and the bottom of the upper bed frame. The foreseeable risk of a small child entering the narrow space, become trapped, and dying from positional asphyxiation far exceeds any design benefits of the Bunk Bed.

30.     Angel Line is in the business of designing, manufacturing and distributing to consumers, children's furniture like the Bunk Bed, which is intended to be located in a child's bedroom where children are expected to sleep, play and otherwise be unsupervised.

31.     As a company that makes furniture specifically intended to be used by children and located in the bedroom of children, Angel Line knew or should have known of the risks that a child could position his body into any narrow space on the Bunk Bed, become trapped and die from positional asphyxiation.

6

32.     As a company in the business of designing, manufacturing and selling to consumers, furniture intended to be used by children, Angel Line knew or should have known that children would be unsupervised in a bedroom, whether to sleep or play, and children would encounter the Bunk Bed and any design features creating a narrow opening where the body of a small child could become trapped and die from positional asphyxiation or strangulation.

33.     Angel Line's design of the Bunk Bed, which allowed for a narrow opening where a child's body could become trapped and cause positional asphyxiation, failed to conform to public or private safety standards and/or or best practices for bunk beds or furniture intended to be used by children.

34.     Angle Line's design of the Bunk Bed, which allowed for a narrow opening where a child's body could become trapped and cause positional asphyxiation was far more dangerous than a reasonably prudent consumer would expect since the Bunk Bed is intended to be used for the foreseeable purpose of being located in a child's room where children are expected to be unsupervised and interact with the product.  However, the dangers and risks associated with this design are deceptive, latent and/or otherwise are not immediately recognizable to the average adult consumer.  The dangers and risks associated with this design are not recognizable to children.

35.     Many reasonable alternative designs existed that would have eliminated the risks and hazards associated with a child's death from the narrow opening between the top rung of the ladder and the bottom of the upper bed frame.

36.     The alternative designs that would have eliminated the risks and hazards that proximately caused the damages and death in this case, are technically and economically feasible, and these alternative designs would not diminish the intended or actual utility of the Bunk Bed.

7

37.     The risks and hazards associated with a child dying from positional asphyxiation are not inherent characteristics of a bunk bed and ladder.  The risk of children dying from positional asphyxiation from the design of this Bunk Bed can be completely eliminated without compromising the usefulness or desirability of the Bunk Bed.

38.     Angel Line knew, or in the exercise of reasonable care, should have known about a risk of children dying from positional asphyxiation or strangulation when using Bunk Beds generally, and specifically with this Bunk Bed design, which creates a narrow space where the body of a small child can become trapped and the child can die from positional asphyxiation.

39.     Angel Line failed to provide a sufficient or adequate warning or instruction that a bunk bed manufacturer, exercising reasonable care, would have provided concerning risk of children dying from positional asphyxiation or strangulation, in light of the likelihood that the Bunk Bed would cause this type of harm and in light of the seriousness of a child dying.

40.     The risk of positional asphyxiation or strangulation from this Bunk Bed was not open or obvious or a matter of common knowledge for a child less than three years old like Jasyiah.  Likewise, the risk of positional asphyxiation or strangulation from this Bunk Bed was not open or obvious or a matter of common knowledge for the typical adult consumer who would purchase this Bunk Bed for use in a child's room where children are expected to exist without supervision to sleep or play.

41.     As a direct and proximate result of the defective and unreasonably dangerous Bunk Bed, Jasyiah suffered conscious pain, suffering, panic, and death.

42.     Jasyiah's conscious pain, suffering and panic, as well as his death, was the direct and proximate result of misconduct of Angel Line that amounted to a flagrant disregard of the safety of children like Jasyiah who might be harmed or killed by a Bunk Bed that contains a

narrow opening where the body of a small child could become trapped and die from positional asphyxiation.

43.     Angel Line, like other manufacturers of furniture intended to be used by children, knew of the likelihood that children can die, and have died, in bunk beds and other furniture intended to be used by children from positional asphyxiation or strangulation.

44.     The flagrant disregard for the safety of young children like Jasyiah who are likely to be in a bedroom where such a Bunk Bed is located, demonstrates the flagrant misconduct of Angel Line by designing, manufacturing and/or distributing children's furniture expected to be in the bedroom of children and expected to be used by children, but contains a design feature that increases the likelihood of the such serious harm as death to a child.

## SECOND CLAIM
### (Supplier Liability Wayfair and Angel Line/Longwood Forest)

45.     Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully restated herein.

46.     Wayfair is not the manufacturer of the Bunk Bed.

47.     Wayfair, in the ordinary course of its business, engages in the selling or distributing consumer products, and/or otherwise participates in the placing of consumer products in the stream of commerce in Ohio.

48.     Wayfair engaged in the selling, distributing or otherwise participated in placing the Bunk Bed into the stream of commerce in Ohio.

49.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), Angel Line and/or Longwood Forest, Inc. is not the manufacturer of the Bunk Bed.

50.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), Angel Line and/or Longwood Forest Products, Inc., in the ordinary course of its business, engages in the selling or

9

distributing of consumer products, and/or otherwise participates in the placing of consumer products in the stream of commerce in Ohio.

51.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), Angel Line and/or Longwood Forest Products, Inc. engaged in the selling, distributing or otherwise participated in placing the Bunk Bed into the stream of commerce in Ohio.

52.     Wayfair and/or Angel Line and/or Longwood Forest Products, Inc. were negligent in selling, distributing or otherwise placing the Bunk Bed in the stream of commerce and having the Bunk Bed delivered to Jasyiah's family. This negligence was a proximate cause of the conscious pain, suffering and panic, as well as the proximate cause of Jasyiah's wrongful death.

53.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), and based upon information and belief, the actual manufacture of the Bunk Bed is not subject to judicial process in Ohio.

54.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), and based upon information and belief, the Estate will be unable to enforce a judgment against the actual manufacturer of the Bunk Bed due to the actual or asserted insolvency of the manufacturer.

55.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), and based upon information and belief, Angel Line and/or Longwood Forest Products, Inc. owned, or when the Bunk Bed was supplied to the Jasyiah's family, was owned in whole or in part, by the manufacturer of the Bunk Bed.

56.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), and based upon information and belief, Angel Line and/or Longwood Forest Products, Inc. created or furnished a manufacturer with the design or formulation that was used to produce, create, make, construct, assemble, or rebuild the Bunk Bed or a component of the Bunk Bed.

57.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), and based upon information and belief, Longwood Forest Products Inc. and/or the manufacturer, who is unknown to Plaintiff, marketed the Bunk Bed under the Angel Line label or trade name.

58.     Pleading in the alternative pursuant to Ohio Civil Rule 8(A), and based upon information and belief, Angel Line marketed the Bunk Bed under its own label or trade name.

57.     Wayfair, Angel Line and/or Longwood Forest Products, Inc. failed to respond timely and reasonably to a written request to disclose the name and address of the manufacturer of the Bunk Bed.

59.     Angel Line and/or Longwood Forest Products, Inc. are subject to liability for this product liability claim as if they were the manufacturer of the Bunk Bed, as permitted under Ohio law.

60.     Plaintiff is legally entitled to collect all damages from the suppliers, Wayfair, Angel Line and/or Longwood Forest Products, Inc., as if the suppliers were the actual manufacturers of the Bunk Bed.

**WHEREFORE**, Plaintiff Charles Cooper, Jr., Administrator of the Estate of Jasyiah J. Boone, under all counts of the Complaint, requests Judgment in his favor, against all defendants, joint and severally, for the following relief:

A.     Compensatory damages in an amount to be determined at trial but in excess of $25,000;

B.     Punitive damages in an amount to be determined at trial;

C.     Attorneys fees and costs; and

D.     Such other and further relief as may be just and proper.

Respectfully submitted,

/s/Daniel R. Mordarski
Daniel R. Mordarski (0063228)
LAW OFFICES OF
DANIEL R. MORDARSKI LLC
5 East Long Street, Suite 1100
Columbus, Ohio 43215
(614) 221-3200
(614) 221-3201 – Facsimile
dan@mordarskilaw.com

/s/Charles Steven Rabold
Charles Steven Rabold (0019537)
Benjamin F. Barrett Sr. (0031261)
Miraldi and Barrett, Attorneys
6061 S. Broadway Ave.
Lorain, Ohio 44053-3818
1-800-589-3023  or 440-233-1110
fax: 440-233-8527
ben@mirbar.com
csrabold@hotmail.com

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

/s/ Daniel R. Mordarski
Daniel R. Mordarski