UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Charles H. Cooper, Jr.,**
Administrator for the Estate of J.B.,
deceased minor,

      **Plaintiff,**

v.

**Longwood Forest Products, Inc.** *et al.,*

      **Defendants.**

**Case No. 2:20-cv-3332**

**Judge Michael H. Watson**

**Magistrate Judge Jolson**

## OPINION AND ORDER

Charles H. Cooper, Jr. as administrator for the Estate of J.B., a deceased minor ("Plaintiff") sued, among others, Moash Enterprise Company Limited ("Defendant") under the Ohio wrongful death and survival statutes. ECF No. 102. These claims arise out of the tragic death of two-year-old J.B. *Id.*

Defendant is a design and manufacturing company based in Vietnam. *Id.* On April 13, 2022, after several unsuccessful attempts to serve Defendant pursuant to the Hague Convention, the Court ordered that Defendant be served via email. ECF No. 101. Plaintiff thereafter served Defendant via email on May 10, 2022. ECF No. 108. When Defendant failed to respond or appear in this case, Plaintiff obtained an entry of default from the Clerk pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 114. Plaintiff now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b) and requests the Court schedule either a jury trial or a damages hearing to determine Plaintiff's compensatory damages, punitive

damages, pre- and post-judgment interest, and attorneys' fees. Mot. Def. J. 2, ECF No. 118. For the following reasons, Plaintiff's motion is **GRANTED**.

### I. FACTS

"An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." *Truex v. Drivers Direct, LLC*, 583 F. Supp. 1033, 1035 (N.D. Ohio 2022) (quoting Fed. R. Civ. P. 8(b)(6)). "In other words, a default upon well-pleaded allegations establishes defendant's liability . . . ." *Id.* (citation omitted). Thus, the Court assumes the following as true:

Defendant is a foreign company created under the law of, and with its principal place of business in, Vietnam. Second Amend. Compl. ¶ 6, ECF No. 102. Defendant designs and manufactures goods that are sold in the United States and in the State of Ohio. *Id.* ¶ 9. Specifically, Defendant designed and manufactured a Fremont Twin over Twin Bunk Bed by Angel Line that was eventually sold online by Wayfair. *Id.* ¶¶ 12–14. The bunk bed contained a narrow opening between the top rung of the ladder and the bottom of the upper bed frame where a small child could enter, become trapped, and die from positional asphyxiation. *Id.* ¶ 18. On May 22, 2018, J.B. was playing with his brothers when he became trapped in between the top step of the ladder and bed. *Id.* ¶¶ 19–20. J.B. eventually died. *Id.* ¶ 23. J.B.'s brother witnessed the incident, and J.B.'s mother found his body trapped in the ladder. *Id.* ¶¶ 20, 22. The Franklin County Coroner performed an autopsy and

concluded that the cause of death was "positional asphyxia due to chest compression between bunk bed and the bunk bed ladder." *Id.* ¶ 24. After J.B.'s death, Plaintiff, as administrator of J.B.'s estate, brought suit against, *inter alia*, Defendant for the benefit of J.B's estate. *Id.* ¶ 1.

Defendant, as a designer and/or manufacturer of furniture marketed for and intended to be used by children, recognized the risk of children dying from positional asphyxiation in the ladder as it had been made aware of prior incidents of asphyxiation. *Id.* ¶ 29, 45. Defendant also had superior knowledge about the hazards and risks of children dying from positional asphyxiation in the ladder. *Id.* ¶ 30. As such, the risks of children dying from positional asphyxiation in the ladder were foreseeable by Defendant. *Id.* ¶¶ 31–36. The foreseeable risks of the bunk bed design outweighed the benefits of the bunk bed design. *Id.* ¶ 31. Defendant had access to reasonable and technically and economically feasible alternative designs which would have eliminated the risks and hazards of a child dying from positional asphyxiation. *Id.* ¶¶ 37–38. This risk of positional asphyxiation was not open or obvious to a typical adult consumer or especially to a young child. *Id.* ¶ 42.

Defendant also failed to provide a sufficient or adequate warning or instruction that a manufacturer, exercising reasonable care, would have provided concerning the risk of children dying from positional asphyxiation because it knew of the likelihood that the bunk bed design would cause such harm. *Id.* ¶ 41, 45.

Defendant flagrantly disregarded the risk of harm and safety of children, and its flagrant disregard was the direct and proximate result of J.B.'s conscious pain, suffering, panic, and death. *Id.* ¶¶ 43–46. Defendant's acts and omissions demonstrate malice and a conscious disregard for the rights and safety of children, demonstrated by Defendant's failure to comply with federal safety statutes and regulations, failing to comply with industry and government safety standards for bunk beds, failing to comply with industry product safety standards, incorrectly representing that the product complied with safety standards, misleading or concealing information from Federal investigators, and knowingly violating federal law by failing to promptly notify the Consumer Product Safety Commission about J.B.'s death. *Id.* ¶ 67.

## II. DEFENDANT'S LIABILITY

### A. Wrongful Death Claim

The Ohio wrongful death statute provides that "when the death of a person is caused by a wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued . . . shall be liable to an action for damages . . . [.]" Ohio Rev. Code § 2125.01. Thus, the Court must determine whether J.B.'s death was caused by a wrongful act, neglect, or default which would have entitled J.B. to maintain an action and recover damages if he had not died. Plaintiff asserts that J.B. would have a cause of action under the Ohio

Products Liability Act ("OPLA") for defective design and failure to warn. Ohio Rev. Code §§ 2307.71–2307.79.

To prevail on a products-liability claim under the OPLA, Plaintiff must show by a preponderance of the evidence that: (1) the product was defective; (2) the defective aspect of the product was the proximate cause of the injury; and (3) the defective product was actually manufactured by the defendant." *Biehl v. B.E.T., Ltd.*, No. 18-3201, 2018 WL 7502930, at *2 (6th Cir. Oct. 17, 2018) (citing Ohio law). Plaintiff has established all three elements by a preponderance of the evidence.

First, Plaintiff has established the product was defective in its design. To show that the product contained a design defect, Plaintiff must show that "at the time [the bunk bed] left the control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation[.]" Ohio Rev. Code § 2307.75(A). The statute provides a non-exhaustive list of factors a court should consider when analyzing the foreseeable risks of the product and the benefits of the product's design.[1]

---

[1] Factors relevant in evaluating the foreseeable risks include: (1) the nature and magnitude of the risks of harm in light of the intended and reasonably foreseeable uses; (2) the likely awareness of product users of those risks of harm; (3) the likelihood that the design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alternations of the product; (4) the extent to which that design or formulation conformed to any applicable public or private product

Based on the statutory factors, Plaintiff has shown that the foreseeable risk associated with the bunk bed design outweighed the benefits associated with that design. As to the foreseeable risks, Plaintiff has shown that the nature and magnitude of the risk of death from positional asphyxiation was high given that it was reasonably foreseeable the bunk bed would be in a child's room where children are often unsupervised, product users were likely unaware of the risks, and the design was more dangerous than a reasonably prudent consumer would expect of a bunk bed. *See* Second Amend. Compl. ¶¶ 31–32, 36. ECF No. 102. Plaintiff has further shown that the product design failed to conform to applicable public or private safety standards. *Id.* ¶ 35. As to the benefits of the design, Plaintiff has shown that there were alternative designs that were both technically and economically feasible and that those alternative designs would have eliminated the risks of death. *Id.* ¶¶ 37–38. Second, Plaintiff has shown that the defective aspect of the product was the proximate cause of J.B.'s injury and death because J.B. died from positional

---

standard; (5) the extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect. Ohio Rev. Code § 2307.75(B). Factors relevant to benefits of the design include: (1) the intended or actual utility of the product, including any performance or safety advantages associated with that design; (2) the technical and economic feasibility of using an alternative design; (3) the nature and magnitude of any foreseeable risks associated with an alternative design. Ohio Rev. Code § 2307.75(C).

asphyxiation due to his body being stuck in the defective ladder. *Id.* ¶ 43. Finally, Plaintiff has shown that Defendant manufactured the defective product. *Id.* ¶¶ 27–31. Thus, Plaintiff has shown that the bunk bed ladder was defectively designed under the OLPA.

The OPLA also provides plaintiffs a cause of action when a manufacturer fails to provide an adequate warning about the risks of a product. Ohio Rev. Code § 2307.76(A)(1). Specifically, a product is defective under the OPLA due to inadequate warning or instruction if, at the time the product left the control of the manufacturer, the manufacturer knew or, in the exercise of reasonable care, should have known about a risk, and the manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk. *Id.* Thus, "to prove a failure to warn claim, a plaintiff must prove: (1) a duty to warn against reasonably foreseeable risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach." *Miller v. ALZA Corp.*, 759 F. Supp. 2d 929, 934 (S.D. Ohio 2010) (citing *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 514 (6th Cir. 2003) (cleaned up)).

Plaintiff has established all three elements of his failure to warn claim. First, Plaintiff has shown that Defendant had a duty to warn against reasonably foreseeable risks because, at the time the bunk bed left Defendant's control, Defendant knew or, in the exercise of reasonable care, should have known about the risk and failed to provide an adequate warning about that risk. *See* Second

Amend. Compl. ¶¶ 40–42, ECF No. 102. Second, Plaintiff has shown that Defendant breached its duty to warn by failing to provide any warning about the risks of positional asphyxiation. *Id.* ¶ 41. Finally, Plaintiff has shown that J.B.'s injury was proximately caused by Defendant's breach. *Id.* ¶ 44.

Next, the Court must decide whether Plaintiff is an appropriate party to bring suit on J.B.'s behalf under the Ohio wrongful death statute. The statute provides that "a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the . . . parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death[.]" Ohio Rev. Code § 2125.02. As administrator of J.B.'s estate, Plaintiff has statutory authority to bring this action. *See Ramsey v. Neiman*, 634 N.E.2d 211, 212 (Ohio 1994) (holding that administrators and executors are personal representatives under the Ohio wrongful death statute).

Thus, because Defendant is liable under the OPLA for its defective design and for its failure to warn, Defendant is liable under Ohio wrongful death statute because J.B. would have had a claim under the OPLA had he not died, and Defendant's actions caused J.B.'s death.

### B. Survival Claim

Survival claims in Ohio are governed by Ohio Revised Code Section 2305.21, which provides "[i]n addition to the causes of action which survive at common law, causes of action for . . . injuries to the person . . . also shall survive; and such

Case: 2:20-cv-03332-MHW-KAJ Doc #: 119 Filed: 11/10/22 Page: 9 of 10 PAGEID #: 1344

actions may be brought notwithstanding the death of the person entitled or liable thereto." Ohio Rev. Code § 2305.21. An action brought under the survival statute for injuries to the person can only be brought for physical injuries and must be injuries sustained during the decedent's lifetime. *See Haggard v. Stevens*, No. 2:09-cv-1144, 2010 WL 3658809, at *9–*10 (S.D. Ohio Sept. 14, 2010), *aff'd* 683 F.3d 714 (6th Cir. 2012) (applying Ohio law); *Jaco v. Bloechle*, 739 F.2d 239, 241–42 (6th Cir. 1984) (discussing how a survival claim is predicated upon the decedent's claim for damages sustained during his lifetime). Plaintiff also bases his survival claim on J.B.'s claim under the OPLA. *See* Second Amend. Compl. ¶¶ 26, 64, ECF No. 102. For the same reasons that Plaintiff succeeds on his wrongful death claim under the OPLA for J.B.'s death, Plaintiff also succeeds on his survival claim under the OPLA. J.B. suffered an injury to his person during his lifetime when, at the very least, he endured conscious pain, suffering, anxiety, fear, panic, the inability to breathe while he was stuck in the ladder opening, such that his claim survives his death under the Ohio survival statute. *See* Second Amend. Compl. ¶ 65, ECF No. 102.

Additionally, Plaintiff is also a proper party to bring this survival claim. Although there is no requirement under the Ohio survival statute that such a claim be brought by a specific party, under a traditional Article III standing analysis, the estate of the decedent is a proper party to stand in the shoes of one who has suffered an injury-in-fact. *See Harry v. Kent Elastomer Products, Inc.*, 538 F. Supp. 3d 776, 780–81 (N.D. Ohio 2021).

Case No. 2:20-cv-3332      Page 9 of 10

### III. DAMAGES

Federal Rule of Civil Procedure 55(b)(2) provides that when the Court enters default judgment, the Court may conduct a hearing to determine the amount of damages. "Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal citations and quotation marks omitted). "The district court must conduct [] an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (internal citation omitted).

Here, Plaintiff has not submitted any record evidence of damages. Instead, Plaintiff requests a jury trial or, in the alternative, a court hearing, to ascertain the appropriate amount of damages. The Court will hold a status conference on this matter on **Tuesday November 29, 2022, at 2:00pm in Courtroom 120**, and issue a scheduling order thereafter.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**