UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Charles H. Cooper, Jr.,
as administrator of the Estate of J.B.,
deceased minor,

    Plaintiff,

v.

Moash Enterprise Company Limited,

    Defendant.

Case No. 2:20-cv-3332

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

After Moash Enterprise Company Limited ("Defendant") was found liable by default, the Court held a jury trial on damages in this tragic case. Minute Entries, ECF Nos. 140 & 141. Defendant was not present, and the jury awarded a verdict totaling $787 million. Jury Verdict, ECF No. 142. This award was broken down as follows: $175 million in compensatory damages on Plaintiff's survival claim; $90 million in compensatory damages on Plaintiff's wrongful death claim; and $522 million in punitive damages on Plaintiff's survival claim. *Id.*

Plaintiff now asks the Court to reduce the jury's award and enter judgment for a total of $615 million plus post-judgment interest. Mot., ECF No. 145. He argues that the jury's $522 million punitive damages award should be reduced to $350 million because Ohio law limits punitive damages to twice the amount of compensatory damages awarded on the survival claim. When $350 million is added to the $175 million in compensatory damages on the survival claim and

$90 million in compensatory damages on the wrongful death claim, the resulting award is $615 million.

## I. ANALYSIS

The jury's award implicates several Ohio statutes. First, Ohio imposes a statutory cap on compensatory damages in tort actions. Ohio Rev. Code § 2315.18(B)(2). Second, the Court must consider whether there are any statutory caps on compensatory damages in wrongful death actions. Third, Ohio also imposes a statutory cap on punitive damages. Ohio Rev. Code § 2315.21(D)(2)(a). The Court addresses each issue.

### A. Compensatory Damages on Survival Claim

Plaintiff's survival action is a tort claim and thus implicates Ohio's statutory cap on compensatory damages in tort actions. *See Freudeman v. Landing of Canton*, 702 F.3d 318, 332 (6th Cir. 2012) ("[T]he common-law tort action for the decedent's own injuries suffered before death survives and can be brought by the executor or administrator of the decedent's estate." (citations omitted)); *see also* Ohio Rev. Code § 2315.18(A)(7) ("'Tort action' includes a civil action upon a product liability claim[.]"). That statutory cap is found in Ohio Revised Code Section 2315.18 and states in pertinent part:

> (B) In a tort action to recover damages for injury or loss to person or property, all of the following apply:
>
> . . .
>
> (2) Except as otherwise provided in division (B)(3) of this section, the amount of compensatory damages that represents damages for

> noneconomic loss that is recoverable in a tort action under this section to recover damages for injury or loss to person or property shall not exceed the greater of two hundred fifty thousand dollars[.]

Ohio Rev. Code. § 2315.18(B)(2). Thus, unless an exception to the cap applies, Plaintiff is limited to recovering $250,000 in compensatory damages on the survival claim.

He argues, however, that an exception to the cap does apply. Namely, he invokes a statutory exception that provides:

> (3) There shall not be any limitation on the amount of compensatory damages that represent damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:
>
> (a) Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system;
>
> (b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.

Ohio Rev. Code § 2315.18(B)(3).

Here, the Court provided the jury with an interrogatory that specifically asked it to find whether, as a matter of fact, J.B. suffered from either a permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system or a permanent physical functional injury that permanently prevented him from being able to independently care for himself and perform life-sustaining activities. Special Verdict Form 1B, ECF No. 142 at PAGEID # 2364. The jury

answered "yes," and Defendant has made no argument that the jury's finding was unsupported by the evidence.

Accordingly, based on the jury's factual finding—and the fact that no argument has been made to the contrary—the Court concludes in this case only that the statutory exception to the cap on non-economic damages applies, and the Court will not reduce the jury's $175 million compensatory damages award on the survival claim.

### B. Compensatory Damages on Wrongful Death Claim

As Plaintiff notes, Ohio's statutory cap on compensatory damages in tort cases does not apply to wrongful death actions. Ohio Rev. Code § 2315.18(H)(3) ("This section does not apply to any of the following: . . . Wrongful death actions brought pursuant to Chapter 2125. of the Revised Code."); *Eppley v. Tri-Valley Local Sch. Dist. Bd. of Edu.*, 908 N.E.2d 401, 406 (Ohio 2009) ("[A]lthough damages in general tort actions have been limited by R.C. 2315.18, damages recoverable in wrongful death actions cannot be limited." (citing Ohio Const. Art. I, sec. 19a)).

As the Court granted Plaintiff default judgment on his wrongful death claim under Chapter 2125 of the Ohio Revised Code, Op. and Order 4–8, ECF No. 119, Ohio's cap on compensatory damages in tort cases plainly does not affect the jury's award of $90 million in compensatory damages on that claim. The Court is not aware of any other applicable limit on compensatory damages for wrongful death claims. *See, e.g.*, Ohio Const. Art. I sec. 19a ("The amount of

damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another, shall not be limited by law.").

Accordingly, the Court will not reduce the jury's compensatory damages award on the wrongful death claim.

### C. Punitive Damages on Survival Claim

Although punitive damages are available for Plaintiff's survival claim, they "are not available for a wrongful death claim." *Freudeman*, 702 F.3d at 332 (citations omitted).

Moreover, the available punitive damages are limited under Ohio law. Ohio Revised Code Section 2315.21(D)(2)(a) states, "[t]he court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of the compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section."

Plaintiff asserts that the punitive damages cap arguably applies only to cases brought in an Ohio Court of Common Pleas, Mot. 3, ECF No. 145, but he nonetheless ultimately asks the Court to apply the statutory cap. *Id.* ("Plaintiff has elected to agree—for the purposes of this judgment only—that it is appropriate to reduce the punitive damages award consistent with Ohio's statutory scheme.").

Thus, the Court will limit the punitive damages to two times the amount of compensatory damages awarded. Importantly, the compensatory damages awarded on the wrongful death claim cannot be combined with the compensatory

damages awarded on a survival claim for purposes of calculating the cap on punitive damages. *Freudeman*, 702 F.3d at 331–33. The applicable number is the compensatory damages awarded for the survival claim, which, here, is $175 million. Twice $175 million is $350 million, and the Court thus reduces the jury's punitive damages award from $522 million to $350 million.

In sum, the jury's award of $175 million in compensatory damages on the survival action as well as its award of $90 million in compensatory damages on the wrongful death action are affirmed. The Court reduces the jury's punitive damages award to $350 million. This amounts to a total award for Plaintiff of $615 million.

### D. Attorney's Fees

Although the jury determined that Plaintiff was entitled to recover attorney's fees from Defendant, Verdict Form 4, ECF No. 142 at PAGEID # 2370, Plaintiff's attorneys waive any right to collect attorney's fees. Mot. 4, ECF No. 145.

### E. Interest

Plaintiff asks for post-judgment interest pursuant to 28 U.S.C. § 1961(a),[1] which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." *Id.* (quoting 28 U.S.C. § 1961(a)). The statute provides that interest shall run from the date of the judgment's entry "at a rate

---

[1] "In diversity cases, federal law controls postjudgment interest under 28 U.S.C. § 1961." *Premium Freight Mgmt., LLC v. PM Engineered Solutions, Inc.*, 906 F.3d 403, 410 (6th Cir. 2018) (citation omitted).

equal to the weekly average 1-year constant maturity Treasure yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

As of the date of this Opinion and Order, the weekly average 1-year constant maturity Treasure yield is 5.46%, and the Court allows post-judgment interest to accrue at that rate.

### F. Retaining Jurisdiction

Finally, Plaintiff asks the Court to clarify in the judgment entry that it retains jurisdiction over this case to the extent necessary to assist with Plaintiff's efforts in enforcing the judgment. Mot. 5, ECF No. 145.

"[A] federal court may exercise ancillary jurisdiction . . . 'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–80 (1994)); *see also, e.g., Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010) ("[A] federal court always retains jurisdiction to enforce its lawful judgments"); *Hudson v. Coleman*, 347 F.3d 138, 143–46 (6th Cir. 2003) (explaining when a federal court has ancillary enforcement jurisdiction); *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1235 (6th Cir. 1996) ("[T]he district court may retain jurisdiction to enforce the judgment it enters." (citation omitted)). Plaintiff's requested language is therefore likely unnecessary. Nonetheless, the Court will state in the judgment

that it retains the traditional ancillary enforcement jurisdiction to resolve post-judgment enforcement issues in this case.

## II. CONCLUSION

The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff and against Defendant in the amount of $615 million with post-judgment interest to accrue in accordance with 28 U.S.C. § 1691(a), at a rate of 5.46%. The judgment shall state that the Court retains ancillary enforcement jurisdiction to resolve post-judgment enforcement issues that fall within that jurisdiction. The Clerk shall then close the case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**